# IN THE COURT OF APPEALS OF TENNESSEE
# AT JACKSON
## May 22, 2013 Session

## RICHARD RANDALL v. SHELBY COUNTY UNIFIED SCHOOL BOARD (inclusive of the former Memphis City Schools Board of Education), ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-11-1755      Walter L. Evans, Chancellor

### No. W2012-02124-COA-R3-CV - Filed June 19, 2013

The trial court reversed the Board of Education's decision to dismiss a City of Memphis school teacher.  We reverse the trial court and reinstate the Board of Education's dismissal of the teacher on the ground of unprofessional conduct.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Dorsey E. Hopson, II and Cecilia S. Barnes, Memphis, Tennessee, for the appellants, Shelby County Unified School Board and Kriner Cash.

Darrell J. O'Neal, Memphis, Tennessee, for the appellee(s), Richard Randall.

### MEMORANDUM OPINION[1]

This dispute concerns the termination of a non-tenured teacher following a physical altercation with a student.  Plaintiff/Appellee Richard Randall (Mr. Randall) is a licensed

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

teacher who was hired as a full-time, non-tenured special education teacher by Memphis City Schools ("MCS") in June 2007. In 2009, Mr. Randall was transferred from Stafford Alternative School to Hamilton Success Alternative School Academy ("Hamilton"), a short-term alternative middle school that then had approximately 75 students enrolled.

On February 20, 2009, Mr. Randall was involved in a dispute with students that ended in physical altercations between Mr. Randall and at least one student. After receiving complaints about the incident from two parents, Dr. James Scruggs, ("Dr. Scruggs"), the principal of Hamilton, investigated the matter and submitted witness statements to the MCS Labor Relations Department. The Labor Relations Administrator, Chantay Branch (Ms. Branch), found the statements to be credible and suspended Mr. Randall without pay for 5 days and transferred him to another school. In correspondence to Mr. Randall dated March 5, 2009, Ms. Branch stated that, following a conference with Mr. Randall on February 27, 2009, and a review of the documentation on the incident, it was

> apparent that [Mr. Randall's] unprofessional behavior aggravated this situation. In fact, it appears you tried to provoke the students. You first hung up the phone while the student was talking to his mother, stomped the student's bag of potato chips, and placed the student in a choke hold. As an adult and an educator, you did nothing to de-escalate the situation.

Dr. Scruggs subsequently submitted copies of photographs of Mr. Randall with students in which the students were displaying "gang signs."

MCS reported the February 20 incident and allegation that Mr. Randall had "choked" two students to the Department of Children's Service ("DCS"). In May 2009, DCS notified MCS that Mr. Randall had been investigated as an alleged perpetrator of child abuse and had been notified of his right to a hearing on the allegations. DCS directed MCS to take actions to ensure that Mr. Randall would not be a threat to a student. MCS suspended Mr. Randall without pay by letter dated June 3, 2009.

In February 2010, DCS informed Mr. Randall and MCS that, as the result of an administrative hearing, it had reviewed the investigation that identified Mr. Randall as the perpetrator of child abuse and determined that the reports were properly classified. Following the DCS indication, the State Department of Education "flagged" Mr. Randall's teaching license in accordance with Tennessee Code Annotated § 49-10-608, making him ineligible to hold a teaching position.

By letter dated March 8, 2010, MCS informed Mr. Randall that, in accordance with Tennessee Code Annotated § 49-5-511, it was recommending to the Board of Education

("the Board") that Mr. Randall be dismissed. By letter to the Board dated July 12, 2010, MCS Superintendent Dr. Kriner Cash ("Dr. Cash") recommended that Mr. Randall be terminated for unprofessional conduct unbecoming to a member of the teaching profession. Dr. Cash requested that the Board review the matter pursuant to Tennessee Code Annotated § 49-2-301(b)(1)(GG)(i) to determine whether dismissal was warranted. In August 2010, Dr. Cash informed Mr. Randall by letter that the charges outlined in his July letter to the Board had been presented to the Board and that, if true, the charges warranted dismissal in compliance with the teacher non-tenure law.[2] Dr. Cash placed Mr. Randall on suspension

---

[2]Tennessee Code Annotated § 49-2-301(b)(1) (Supp. 2012) provides, in relevant part:

(GG)(i) The director may dismiss any nontenured, licensed employee under the director's jurisdiction for incompetence, inefficiency, insubordination, improper conduct or neglect of duty, after giving the employee, in writing, due notice of the charge or charges and providing a hearing; provided, that no nontenured, licensed employee under the director's jurisdiction shall be dismissed without first having been given, in writing:
  (*a*) Notice of the charge or charges;
  (*b*) An opportunity for a full and complete hearing before an impartial hearing officer selected by the board;
  (*c*) An opportunity to be represented by counsel;
  (*d*) An opportunity to call and subpoena witnesses;
  (*e*) An opportunity to examine all witnesses; and
  (*f*) The right to require that all testimony be given under oath;
(ii) Factual findings and decisions in all dismissal cases shall be reduced to written form and delivered to the affected employee within ten (10) working days following the close of the hearing;
(iii) Any nontenured, licensed employee desiring to appeal from a decision rendered in favor of the school system shall first exhaust the administrative remedy of appealing the decision to the board of education within ten (10) working days of the hearing officer rendering written findings of fact and conclusions to the affected employee;
(iv) Upon written notice of such appeal being given to the director, the director shall prepare a copy of the proceedings, transcript, documentary and other evidence presented, and transmit the copy of the proceedings, transcript, documentary and other evidence presented within twenty (20) working days of receipt of notice of appeal to the board;
(v) The board shall hear the appeal on the record and no new evidence shall be introduced. The affected employee may appear in person or by counsel and argue why the decision should be modified or reversed. The board may sustain the decision, send the record back if additional evidence is necessary, revise the penalty or reverse the decision. Before any such charges shall be sustained or punishment inflicted, a majority of the membership of the board shall concur in sustaining the charges. The members of the board shall render the decision on the appeal within ten (10) working days after the conclusion of the hearing;
(vi) The director of schools shall also have the right to appeal any adverse ruling by the hearing officer to the board under the same conditions as are set out in this subdivision

(continued...)

without pay pending the outcome of the charges, informed Mr. Randall of his rights under section 49-2-301, and attached a copy of his July letter to the Board.

The matter was heard before a Hearing Officer ("HO") on November 19, 2010. The HO concluded that MCS had produced sufficient evidence to show that Mr. Randall should be terminated on the ground of "unprofessional conduct" pursuant to Tennessee Code Annotated § 49-2-301. The HO also concluded that Tennessee law precluded MCS from employing Mr. Randall where he was designated as a perpetrator of child abuse by DCS. It finally concluded that the charges alleged by MCS were just and warranted dismissal. MCS terminated Mr. Randall from the school system on November 30, 2010.

Mr. Randall appealed DCS's determination indicating him as a perpetrator of child abuse to the Chancery Court for Shelby County, which remanded the matter to DCS for further findings. DCS upheld the indication by order entered February 2010. On September 22, 2011, the chancery court reversed DCS's determination, finding that there was insufficient evidence to sustain the allegations of child abuse.

Mr. Randall appealed the HO's determination to the Board, which heard the appeal on September 28, 2011. Mr. Randall asserted at the hearing that he should be reinstated with back pay in light of the chancery court's September 22, 2011, decision. He further asserted that the photographs allegedly depicting him with students making gang signs were fabricated. Mr. Randall acknowledged, however, that he was prohibited from teaching as a matter of law when MCS terminated him in November 2010. MCS representatives testified, moreover, that Mr. Randall's teaching license was still flagged at the time of the hearing. MCS further argued that Mr. Randall was dismissed not only on the basis of the DCS indication, but also for conduct unbecoming a teacher. MCS asserted that Mr. Randall's conduct in February 2009 was unbecoming and unprofessional regardless of the DCS indication, and that dismissal of Mr. Randall was appropriate on that basis alone. By letter dated October 11, 2011, the Board informed Mr. Randall that it affirmed the HO's decision.

---

[2](...continued)
(b)(1)(GG);

(vii) Any party dissatisfied with the decision rendered by the board shall have the right to appeal to the chancery court in the county where the school system is located within twenty (20) working days after receipt of notice of the decision of the board. It shall be the duty of the board to cause to be transmitted the entire record and other evidence in the case to the court. The review of the court shall be de novo on the record of the hearing held by the hearing officer and reviewed by the board;

(HH) All actions of the directors or their designees shall be consistent with the existing board policies, rules, contracts and regulations[.]

Mr. Randall filed a petition for judicial review pursuant to Tennessee Code Annotated § 4-5-322, naming as Defendants the Shelby County Unified School Board (inclusive of the former Memphis City School Board) and Kriner Cash, Superintendent of Schools, (hereinafter, collectively "MCS") in the Chancery Court for Shelby County on October 21, 2011. In his petition, Mr. Randall asserted that his teaching license had never been suspended or revoked, but only flagged, and that his license was "effectively unflagged on October 17, 2011- less than 14 working days after [the Board] decided to sustain the dismissal charges." He asserted that he should be reinstated as a MCS teacher, and not required to re-apply for a position. On November 29, 2011, Mr. Randall filed a motion to amend his petition by leave of the court to assert that review was proper pursuant to section 49-5-513. On March 26, 2012, MCS moved for summary judgment on the ground that it was undisputed that Mr. Randall could not lawfully teach when the HO made the decision to terminate him in November 2012 and where the HO found that Mr. Randall had engaged in unprofessional conduct regardless of whether the allegation of child abuse was substantiated.

Following a hearing on April 3, 2012, the trial court determined that the matter was subject to *de novo* review pursuant to Tennessee Code Annotated §§ 49-5-513(g) and 49-2-301(b)(1)(GG)(i). The trial court determined that, in light of its September 22, 2011, determination reversing DCS's determination indicating Mr. Randall for child abuse, Mr. Randall had been "vindicated" with respect to the allegations of child abuse, and that the Board's decision not to reinstate him was therefore arbitrary and not supported by the evidence. The trial court held that, pursuant to Tennessee Code Annotated § 49-5-511(a)(3), Mr. Randall was entitled to reinstatement and lost wages for the entire period of his suspension during the term of his contract. The trial court denied MCS's motion for summary judgment and entered final judgment in favor of Mr. Randall on August 10, 2012. MCS filed a timely notice of appeal to this Court.

### *Issues Presented*

MCS presents the following issue for our review:

Did the Chancery Court improperly apply the standard of review under Tenn. Code Ann. § 49-2-301(b)(1)(GG)(i) to erroneously disturb a factually supported judgment of the Board of Commissioners with its own judgment, in contradiction of the facts and law?

### *Standard of Review*

On appeal in a nonjury case, we review the record *de novo* with a presumption of correctness for the factual findings of the trial court, unless the evidence preponderates to the

contrary. Tenn. R. App. P. 13(d); *Ripley v. Anderson County Bd. of Educ.*, 293 S.W.3d 154, 156 (Tenn. Ct. App. 2008). We review the trial court's determinations on matters of law *de novo*, with no presumption of correctness. *Allmand v. Pavletic*, 292 S.W.3d 618, 624 (Tenn. 2009).

## *Discussion*

MCS argues that the trial court's determination that Mr. Randall must be reinstated to his teaching position with lost wages should be reversed where, as a matter of law, under Tennessee Code Annotated § 49-10-608 Mr. Randall was not able to teach at the time his employment was terminated. It further asserts that the decision to terminate Mr. Randall on the basis of unprofessional conduct was supported by the evidence irrespective of the child abuse allegations. It asserts "even without the DCS label of 'child abuser,' [Mr.] Randall's behavior was unprofessional within the meaning of the tenure law, and the Board had sufficient basis to uphold the HO's decision." MCS asserts that, under section 49-5-511(a)(3), reinstatement with back pay is required only when a teacher who has been suspended pending investigation or final disposition of a matter is vindicated from the underlying conduct, and that Mr. Randall was not vindicated with respect to the allegation of unprofessional conduct.

We begin our discussion by observing that Mr. Randall was not a tenured teacher. We also note that the trial court's judgment in this matter was based on its determination that Mr. Randall was "vindicated" of the allegations of child abuse where DCS's indication of child abuse was reversed by the court's September 2011 order. The trial court stated, "[t]he Board failed to recognize that without the DCS indication, there was no evidence to support Mr. Randall's suspension or subsequent termination." The trial court determined that, because Mr. Randall was vindicated by its earlier ruling, the Board had no choice but to reinstate him with back pay for the term of his contract because the Board's decision was not based on the underlying conduct.

We also note that the trial court stated that it reviewed the matter under the parameters established by Tennessee Code Annotated § 49-5-513(g)(2009 & Supp. 2012), which provides, in relevant part, "[t]he review of the court shall be limited to the written record of the hearing before the board and any evidence or exhibits submitted at the hearing." Tenn. Code Ann. § 49-5-513(g)(2009 & Supp. 2012). As stated above, however, Mr. Randall was not a tenured teacher. The trial court's review accordingly was governed by section 49-2-301(b)(1)(GG)(vii), which provides for a *de novo* review on the record of the hearing held by the hearing officer and reviewed by the board[.] § 49-2-301(b)(1)(GG)(vii)(2009 & Supp.

-6-

2012).[3]

A licensed teacher may be dismissed or suspended for incompetence, inefficiency, neglect of duty, unprofessional conduct or insubordination. Tenn. Code Ann. §§ 49-2-301(2009) & 49-5-511(a)(2)(2009 & Supp. 2012). Tennessee Code Annotated § 49-5-501(3)(D)(2009 & Supp. 2012) defines unprofessional conduct, or "conduct unbecoming to a member of the teaching profession," to include, *inter alia*, disregard of the code of ethics of the Tennessee Education Association. The teacher code of ethics, now codified, in relevant part requires teachers to "[m]ake reasonable effort to protect the student from conditions harmful to learning or to health and safety[.]" Tenn. Code Ann. § 49-5-1003(b)(4)(Supp. 2012).

Upon review of the entire record in this case, including the records of the hearing held by the hearing officer and the Board, we agree with MCS that, even absent an indication of child abuse, dismissal of Mr. Randall on the ground of unprofessional conduct was supported by the undisputed portions of the evidence in this case. Even assuming, as Mr. Randall submits, that the photographs of Mr. Randall with students making gang gestures were fabricated by students, the underlying incident precipitating this matter was an altercation with special education students arising from a dispute over a bag of potato chips brought to class by a student. As noted above, Ms. Branch, the labor relations administrator, determined that Mr. Randall acted unprofessionally by aggravating rather than de-escalating a volatile situation. The record before us, including Mr. Randall's testimony regarding the February 20, 2009, incident, supports this assessment.

At the November 2009 hearing before the HO, Mr. Randall testified that he allowed students to bring snacks to class on Friday afternoons if the week had been "a good work week"; that on the afternoon of Thursday, February 19, he told students not to bring snacks on Friday, February 20; and that the February 20 incident began when Mr. Randall told a student he could not bring a bag of potato chips to class. He acknowledged that he called the student's mother and hung-up the phone as the student was speaking to her; that he "snatched" the student's bag of chip's from the classroom assistant's hands; that he "stomped" on the chips, which had fallen on the floor, while telling the student to "get out, get out"; and that he "took him [the student] by his shirt [and] led him out the door." It is undisputed that the incident took place in the presence of other students, and that the situation grew increasingly volatile. Mr. Randall testified that the incident escalated to the student "throwing stuff all over . . . everything was just flying and going. . . . it was, like, whoa." He

---

[3]We additionally note that, effective April 23, 2012, Tennessee Code Annotated § 49-5-512 was amended to specifically be applicable to tenured teachers who receive notification of charges pursuant to § 49-5-511.

further stated that the other students were "enjoying it. I mean a student is challenging a teacher, you know. So they are like, I mean, it became, you know, very, very explosive." In response to questioning regarding whether a school policy provided for dealing with a disruptive student, Mr. Randall stated, "Well, you know what, there may be a policy, but when you are in a situation where someone has to be restrained, I don't know, you know – I think you would have had to – you would have had to been there."

The HO determined that Mr. Randall "was involved in a physical alteration with at least one student" and that, "[d]uring this incident [Mr. Randall] made inappropriate physical contact with at least one student." The HO further found that Mr. Randall "aggravated a volatile incident involving a student by taking the student's potato chips bag and stomping said bag in the presence of the student." The HO determined that Mr. Randall's actions "were harmful to the overall learning environment" and "showed a disregard for the safety and well being of his students." Upon review of the entire record, we hold that the determination by MCS to dismiss Mr. Randall based on unprofessional conduct was supported by the evidence.

### *Holding*

In light of the foregoing, the judgment of the trial court is reversed, and the decision of the Board dismissing Mr. Randall is reinstated. Costs on appeal are taxed to the Appellee, Richard Randall. MCS's request for attorney's fees on appeal is denied. This matter is remanded to the trial court for enforcement of our judgment and the collection of costs.

_____

DAVID R. FARMER, JUDGE